## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN THOMPSON, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| REXAHN PHARMACEUTICALS, INC., PETER BRANDT, CHARLES BEEVER, KWANG SOO CHEONG, GIL PRICE, RICHARD RODGERS, LARA S. SULLIVAN, DOUGLAS J. SWIRSKY, RAZOR MERGER SUB, INC., and OCUPHIRE PHARMA, INC., | ) CLASS ACTION ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. On June 17, 2020, Rexahn Pharmaceuticals, Inc.'s ("Rexahn") Board of Directors (the "Board" or "Individual Defendants") caused Rexahn to enter into an agreement and plan of merger (the "Merger Agreement") with Razor Merger Sub, Inc. ("Merger Sub") and Ocuphire Pharma, Inc. ("Ocuphire").

2. Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Ocuphire, with Ocuphire continuing as a wholly-owned subsidiary of Rexahn; and (ii) each share of Ocuphire common stock will be converted into the right to receive shares of Rexahn common stock such that former Ocuphire shareholders will own approximately

85.7% of the combined company and Rexahn's shareholders will own approximately 14.3% (the "Proposed Transaction").

3. On July 6, 2020, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC"), which recommends that Rexahn's stockholders vote to approve, among other things, the issuance of stock in connection with the Proposed Transaction.

4. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the

owner of Rexahn common stock.

9. Defendant Rexahn is a Delaware corporation and maintains its principal executive offices at 15245 Shady Grove Road, Suite 455, Rockville, Maryland 20850. Rexahn's common stock is traded on the NASDAQ Global Select Market under the ticker symbol "REXN."

10. Defendant Peter Brandt is Chairman of the Board of Rexahn.

11. Defendant Charles Beever is a director of Rexahn.

12. Defendant Kwang Soo Cheong is a director of Rexahn.

13. Defendant Gil Price is a director of Rexahn.

14. Defendant Richard Rodgers is a director of Rexahn.

15. Defendant Lara S. Sullivan is a director of Rexahn.

16. Defendant Douglas J. Swirsky is President, Chief Executive Officer, and a director of Rexahn.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Rexahn, and a party to the Merger Agreement.

19. Defendant Ocuphire is a Delaware corporation and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

20. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Rexahn (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

21. This action is properly maintainable as a class action.

22. The Class is so numerous that joinder of all members is impracticable. As of June 17, 2020, there were approximately 4,019,141 shares of Rexahn common stock issued and outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

23. Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

24. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

25. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

26. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

***Background of Rexahn and the Proposed Transaction***

27. Rexahn is a biotechnology company that focuses on the development of innovative

therapies to improve patient outcomes in cancers that are difficult to treat.

28.     On June 17, 2020, the Board caused Rexahn to enter into the Merger Agreement with the Merger Sub and Ocuphire.

29.     Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into Ocuphire, with Ocuphire continuing as a wholly-owned subsidiary of Rexahn; and (ii) each share of Ocuphire common stock will be converted into the right to receive shares of Rexahn common stock such that former Ocuphire shareholders will own approximately 85.7% of the combined company and Rexahn's shareholders will own approximately 14.3%.

30.     According to the press release announcing the Proposed Transaction:

> Rexahn Pharmaceuticals, Inc. (NasdaqCM: REXN) and Ocuphire Pharma, Inc., a privately-held clinical-stage ophthalmic biopharmaceutical company focused on developing and commercializing therapies for the treatment of eye disorders, today announced the companies have entered into a definitive merger agreement under which Ocuphire will merge with a wholly-owned subsidiary of Rexahn in an all-stock transaction. Following closing, which is expected to occur in the second half of 2020, the combined company will change its name to Ocuphire Pharma, Inc. and is expected to trade on the Nasdaq Capital Market under the ticker symbol "OCUP." The combined company will focus on the advancement of its pipeline of ophthalmic drug candidates. . . .
>
> About the Proposed Transaction
>
> Under the terms of the merger agreement, subject to the satisfaction or waiver of customary closing conditions, including (i) the receipt of the required approval of the Ocuphire stockholders and Rexahn stockholders, (ii) the closing of the pre-merger financing and (iii) Rexahn having a minimum amount of net cash at closing, Ocuphire will merge with a wholly-owned subsidiary of Rexahn, with Ocuphire surviving the merger as a wholly-owned subsidiary of Rexahn.
>
> Upon completion of the merger, Ocuphire stockholders will receive newly issued shares of Rexahn common stock pursuant to an exchange ratio formula set forth in the merger agreement. Under the terms of the merger agreement, immediately following the consummation of the merger, Rexahn's then-current stockholders would own approximately 14.3% of the combined company's common stock, and the former Ocuphire securityholders would own approximately 85.7% of the combined company's common stock, in each case calculated on a fully-diluted basis, assuming Rexahn's net cash balance at closing is between $3.2 million and

$6.0 million. The exchange ratio formula in the merger agreement is subject to adjustment for every $100,000 that Rexahn's actual net cash balance at closing is less than $3.2 million or more than $6.0 million. Based on Rexahn's current estimates, Rexahn believes that it is reasonably likely to deliver significantly less than $3.2 million at closing. If, for example, Rexahn's actual net cash balance at closing is $0, which is the minimum amount of net cash that Rexahn is required to deliver at closing, then immediately following the consummation of the merger, Rexahn's then-current stockholders would own approximately 11.2% of the combined company's common stock, and the former Ocuphire securityholders would own approximately 88.8% of the combined company's common stock, in each case calculated on a fully-diluted basis. Under the terms of the merger agreement, Rexahn's stockholders' ownership percentage in the combined company is subject to a floor of 9.1% regardless of Rexahn's actual net cash balance at closing, assuming Ocuphire waives the minimum net cash requirement at closing. These ownership percentages give effect to the shares of Ocuphire common stock that will be issued to investors in the pre-merger financing prior to the closing of the merger, but do not account for any additional shares of Rexahn common stock that may be issued following the closing or the warrants issuable to investors after closing. As a result, Ocuphire securityholders and holders of Rexahn common stock could own less of the combined company than currently contemplated.

In addition, immediately prior to the closing of the merger, Rexahn stockholders of record will be issued contingent value rights representing the right to receive, during the 15-year period after the closing of the merger, (i) 90% of payments received by the combined company pursuant to its licensing agreements with BioSense Global LLC and Zhejiang HaiChang Biotechnology Co., Ltd., and (ii) 75% of the proceeds received by the combined company from the monetization of Rexahn's existing intellectual property during the 10-year period after the closing of the merger, in each case, less certain permitted deductions.

The merger agreement has been unanimously approved by the boards of directors of each company. Following the merger, Mina Sooch will be appointed to serve as the post-merger combined company's president and chief executive officer. The board of directors for the post-merger combined company will be comprised of seven directors, one of whom will be Richard Rodgers, a current member of the Rexahn board of directors, and the remaining six directors will include existing Ocuphire board members and an additional director designated by Ocuphire.

Oppenheimer & Co. Inc. is acting as financial advisor to Rexahn for the merger transaction, and Hogan Lovells US LLP is serving as legal counsel to Rexahn.

Cantor Fitzgerald & Co. and Canaccord Genuity LLC are acting as co-lead placement agents and financial advisors to Ocuphire in connection with the private placement, and Honigman LLP is serving as legal counsel to Ocuphire.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

31. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

32. As set forth below, the Registration Statement omits material information.

33. First, the Registration Statement omits the Company's and Ocuphire's financial projections, including the "projected financial information[] relating to the business, earnings, and prospects of Rexahn and Ocuphire that was furnished to Oppenheimer [& Co. Inc. ("Oppenheimer")] by Rexahn and Ocuphire."

34. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

35. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Oppenheimer.

36. With respect to Oppenheimer's Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) the "Ocuphire Projections," including Ocuphire's projected unlevered free cash flow through December 31, 2040 and all underlying line items; and (ii) the individual inputs and assumptions underlying the discount rate ranges from 12% to 14% and the perpetuity growth rates of 1.5% to 2.5%.

37. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

38. Third, the Registration Statement omits material information regarding Oppenheimer's engagement.

39. The Registration Statement fails to disclose the amount of compensation Oppenheimer received for the past services that it provided to the Company.

40. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. Fourth, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained "don't ask, don't waive" provisions that are or were preventing other potential parties from requesting waivers of standstill provisions to submit offers to the Company.

42. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

43. Fifth, the Registration Statement fails to disclose the terms and values of all indications of interest submitted to the Company.

44. The Company's stockholders are entitled to an accurate description of the process leading up to the execution of the Merger Agreement.

45. Sixth, the Registration Statement fails to disclose the timing and nature of all communications regarding future employment and directorship of the Company's officers and directors, including who participated in all such communications.

46. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for

stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

47. The omission of the above-referenced material information renders the Registration Statement false and misleading.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Rexahn's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Rexahn

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Rexahn is liable as the issuer of these statements.

51. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Rexahn, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

52. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate

disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

54. The Registration Statement is an essential link in causing plaintiff and Rexahn's stockholders to approve the Proposed Transaction.

55. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants, Ocuphire, and Merger Sub

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants, Ocuphire, and Merger Sub acted as controlling persons of Rexahn within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Rexahn and participation in and/or awareness of Rexahn's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Rexahn, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59. Each of the Individual Defendants, Ocuphire, and Merger Sub was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Rexahn, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

61. Ocuphire and Merger Sub also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

62. By virtue of the foregoing, the Individual Defendants, Ocuphire, and Merger Sub violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants, Ocuphire, and Merger Sub had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: August 3, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: sdr@rl-legal.com
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com